UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RAYMOND GUDINO, THE ESTATE OF RAYMOND GUDINO, by Lesha Creek as Personal Representative, and LESHA CREEK individually,<br><br>                      Plaintiffs,<br><br>                  v.<br><br>HAMILTON COUNTY SHERIFF DEPARTMENT, JARROD HILL, OFFICER, KEVIN HALE, OFFICER, and TIM REED, NURSE,<br><br>                  Defendants. | Case No. 1:18-cv-00653-TWP-MPB |

**ENTRY GRANTING DEFENDANT TIM REED'S MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFFS' FEDERAL CLAIMS**

This matter is before the Court on Defendant Tim Reed's ("Nurse Reed") Motion for Judgment on the Pleadings on Plaintiffs' Federal Claims filed pursuant to Federal Rule of Civil Procedure 12(c) ([Filing No. 15](Filing No. 15)). On March 5, 2018, Plaintiffs, the Estate of Raymond Gudino, by Personal Representative Lesha Creek and Lesha Creek individually ("Plaintiffs"), filed a Complaint for Wrongful Death and Request for Jury Trial, asserting various constitutional and statutory claims against Nurse Reed, the Hamilton County Sheriff's Department, Officer Jarrod Hill, and Officer Kevin Hale ([Filing No. 1](Filing No. 1)). For the reasons stated below, Nurse Reed's Motion for Judgment on the Pleadings ([Filing No. 15](Filing No. 15)) is **granted**

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion for judgment on the pleadings, the Court accepts as true all factual allegations in the

Complaint and draws all inferences in favor of Plaintiffs as the non-moving party. *See Emergency Servs. Billing Corp. v. Allstate Ins. Co.*, 668 F.3d 459, 464 (7th Cir. 2012).

In June 2017, Raymond Gudino ("Gudino") was a juvenile inmate housed at the Hamilton County Juvenile Detention Center. At 17 years old, Gudino had a history of suicide and diagnosed mental health issues. ([Filing No. 1 at 2](Filing No. 1 at 2).) On June 6, 2017, Gudino was placed in medical lockdown after eating a bar of soap. *Id.* On June 14, 2017, Gudino died, but the Complaint does not reveal the cause of death other than to say that he died "as a direct and proximate result of the failure of the Defendants to follow their own policies regulations and procedures." *Id.* at 2-3. The Complaint stresses that Gudino had a history of suicide attempts, and that the Defendants did not "receive sufficient training with respect to suicide precautions, suicide risk, first aid and CPR." *Id.* The Complaint hints, but does not expressly say, that Gudino committed suicide in his cell on June 8, 2017.

On May 15, 2018, Plaintiffs filed a Complaint alleging five counts against all Defendants: (1) deprivation of rights, privileges, and immunities secured by the Constitution and law of the United States under 42 U.S.C. § 1983; (2) denial of privileges and immunities under Article IV, Section II of the United States Constitution; (3) due process and equal protection violations under Amendment XIV, Section I of the United States Constitution; (4) violation of the prohibition against cruel and unusual punishment in Amendment VIII of the United States Constitution; and (5) wrongful death under Indiana's Child Wrongful Death Act.

Nurse Reed was an employee of the Hamilton County Sheriff's Department, which is legally responsible for management of the Juvenile Detention Center. *Id.* at 4. Other than identifying him as such, the Complaint does not mention Nurse Reed except in its references to the Defendants collectively. It asserts "[t]he Defendants were on notice of [Gudino's] past

attempts to commit suicide." *Id.* at 2. According to the Complaint, "[t]he Defendants were to be in contact with Raymond Gudino at least every fifteen (15) minutes and further by the Defendants' own admission they were to conduct block checks every fifteen (15) minutes. The Defendants failed to provide proper observation for Raymond…." *Id.* at 3. The Complaint also alleges Defendants "failed to provide proper medical treatment constituting a deliberate indifference to the serious medical needs of Raymond Gudino" and that failure resulted in his death. *Id.* at 3.

In its "Factual Basis for Claims for Relief" section, the Complaint states:

> The Defendants took no steps, or grossly inadequate steps to implement procedures and protocol complying with the United States Constitution and the Indiana State Constitution, and their own rules and procedures and the common law of the State of Indiana with respect to the incarceration and treatment of Raymond Gudino, and also failed to take steps to ensure on the date of his death that the procedures that were in place for his proper care and treatment while in detention were followed.

*Id.* at 5. Nurse Reed filed an Answer to the Complaint on March 30, 2018 ([Filing No. 9](#)). The other Defendants filed their Answer on April 4, 2018 ([Filing No. 11](#)). Nurse Reed moved for judgment on the pleadings on April 30, 2018.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the parties have filed a complaint and an answer. Rule 12(c) motions are analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007); *Frey v. Bank One*, 91 F.3d 45, 46 (7th Cir. 1996). The complaint must allege facts that are "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id*. Stated differently, the complaint must include "enough facts to state a claim to

relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (internal citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Like a Rule 12(b)(6) motion, the court will grant a Rule 12(c) motion only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (quoting *Craigs, Inc. v. Gen. Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993)). The factual allegations in the complaint are viewed in a light most favorable to the non-moving party; however, the court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *Id.* (quoting *R.J.R. Serv., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989)). "As the title of the rule implies, Rule 12(c) permits a judgment based on the pleadings alone…. The pleadings include the complaint, the answer, and any written instruments attached as exhibits." *Id.* (internal citations omitted).

## III. DISCUSSION

Nurse Reed asks the Court to render judgment in his favor on Plaintiffs' claims because the Complaint "failed to allege that Tim Reed was personally involved in the alleged mistreatment of Raymond Gudino." (Filing No. 16 at 3.) Nurse Reed argues that "[i]n order to state a constitutional claim under § 1983 for monetary damages, a plaintiff must allege that a defendant was personally involved in the alleged constitutional deprivation." *Id.* at 4 (citing *Jackson v. DeTella*, 998 F.Supp. 901, 904 (N.D. Ill. 1998)). "Each individual defendant can only be liable for what he did personally and not for the actions of other defendants, either singly or as a group." *Id.* (citing *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987)).

4

Nurse Reed points out that the only time he is mentioned by name in Plaintiffs' Complaint comes in the allegation that he was an employee of the Hamilton County Sheriff's Department. *Id.* at 4-5. Allegations that are aimed at the Defendants collectively amount to "boilerplate legal conclusions." *Id.* at 4. Nurse Reed asserts that "Plaintiffs state no facts which would show Raymond Gudino ever met Tim Reed, was treated by him, was wronged by him, or ever came into contact with him at all." *Id.* at 5.

Plaintiffs' respond that several specific factual allegations were leveled against "all Defendants," including Nurse Reed. ([Filing No. 19 at 2](#).) They argue that all Defendants failed to provide proper "monitoring, observation, and medical treatment," all Defendants "were on notice of the Decedent's past attempts to commit suicide, and his mental health diagnoses, and still violated his constitutional rights," and all Defendants "did not receive sufficient training with respect to suicide precautions, suicide risk, first aid and CPR." *Id.* (quoting from the Complaint). Plaintiffs argue that their Complaint alleges all Defendants "[f]ailed to provide proper observation for Raymond Gudino," that they "failed to provide proper medical treatment constituting a deliberate indifference to the serious medical needs of Raymond Gudino," and that they "were deliberately reckless and indifferent to the proper observation and medical care of Raymond Gudino." *Id.* at 2-3.

In *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974), the Seventh Circuit affirmed dismissal of a complaint which was absent of "any allegation of any act on the part of defendant toward the plaintiff." In doing so, the Seventh Circuit said, "[w]here a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed…." *Id.*

A review of Plaintiffs' Complaint reveals it is deficient not only because it does not allege which acts Nurse Reed specifically committed that form a basis for its claims against him, but because its allegations mostly consist of unsupported conclusions. The Complaint does not contain a sufficient factual basis to give Nurse Reed fair notice of the grounds upon which Plaintiffs' claims rest, nor does it allow the Court to draw any reasonable inference that Nurse Reed is liable for the misconduct alleged.

Most of the Plaintiffs' allegations are generalized accusations that the Defendants did not provide proper care for Gudino. Plaintiffs allege "[t]he Defendants failed to provide proper observation for Raymond Gudino," and "Defendants failed to provide proper medical treatment". ([Filing No. 1 at 3](Filing No. 1 at 3).) They also allege "The Defendants took no steps, or grossly inadequate steps to implement procedures and protocol complying with the United States Constitution and the Indiana State Constitution". *Id.* at 5. The Complaint contains many of these generalized allegations that amount to legal conclusions unsupported by fact.[1]

The few specific facts alleged in the Complaint are insufficient to support the inference that Nurse Reed is liable for the misconduct alleged. For example, the Complaint states that "[t]he Defendants were to be in contact with Raymond Gudino at least every fifteen (15) minutes and further by the Defendants' own admission they were to conduct block checks every fifteen (15) minutes." *Id.* at 3. Even if the Court were to assume that the Complaint meant that Nurse Reed specifically, and not another defendant, was supposed to check in on Gudino every 15 minutes, the Complaint does not allege that he did not do so. It only says that all the Defendants failed to provide proper monitoring. It does not say Nurse Reed, or any of the Defendants, failed to check

---

[1] For example, the Complaint alleges "the Defendants collectively demonstrated deliberate indifference to the Decedent's medical, mental, and emotional needs," that they were "recklessly indifferent to the proper observation and medical care of Raymond Gudino," and that they "permitted the implementation of inappropriate *de facto* practices which deviated from their own policies and acceptable standards," etc. ([Filing No. 1](Filing No. 1)).

in on Gudino every 15 minutes, or that they only checked in on him every 30 minutes. Nor does it say specifically what the consequences of this improper monitoring were or how Nurse Reed could have alleviated those consequences by providing medical attention.

The Complaint alleges the Defendants did not "receive sufficient training with respect to suicide precautions, suicide risk, first aid and CPR." *Id.* But it does not weave that conclusion into any factual narrative, explaining how that insufficient training manifested a violation of Gudino's Constitutional rights or how sufficient training might have prevented his death. Even if the Court were to assume that the Plaintiffs meant to allege that Nurse Reed, specifically, was not properly trained in suicide prevention and CPR, that bare fact without accompanying explanation of how his improper training was responsible for Gudino's death is not enough to raise Plaintiffs' right to relief above a speculative level.

As Nurse Reed correctly asserts, even if the Complaint had singled him out for the alleged misconduct it attributes to the Defendants collectively, it still fails to provide the necessary factual basis to support a claim for relief. The Complaint alleges only conclusory claims and one or two specific claims that, without context, leave the Court and Nurse Reed to speculate regarding a right to relief. Without the necessary factual support in the pleadings, the action against Nurse Reed cannot proceed.

## IV. CONCLUSION

For the foregoing reasons, Tim Reed's Motion for Judgment on the Pleadings (Filing No. 15) is **GRANTED**. Plaintiffs' claims against Nurse Reed are **DISMISSED without prejudice**. Plaintiffs are granted leave to file an Amended Complaint within **fourteen (14) days** of the date of this Entry to sufficiently allege factual support in the pleadings in the action against Nurse Reed. If nothing is filed, the dismissal will convert to one with prejudice and Plaintiffs' claims against

Nurse Reed will be dismissed with prejudice. The claims against Hamilton County Sheriff's Department, Officer Jarrod Hill, and Officer Kevin Hale remain pending.

**SO ORDERED.**

Date: 2/11/2019

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Scott Allen Benkie
BENKIE & CRAWFORD
bclaw@sbcglobal.net

Carol A. Dillon
BLEEKE DILLON CRANDALL, P.C.
carol@bleekedilloncrandall.com

Christopher Andrew Farrington
BLEEKE DILLON CRANDALL ATTORNEYS
drew@bleekedilloncrandall.com

Donald B. Kite, Sr.
don.kite@gmail.com